IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>ROBERT PATTERSON,<br><br>　　　　　　Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTION FOR *JAMES* HEARING<br><br>Case No. 2:22-CR-491 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Robert Patterson's Motion for *James*[1] Hearing.[2] For the reasons discussed herein, the Court will deny the Motion.

I.　BACKGROUND

Patterson is charged as one of 11 defendants named in an eight-count indictment with one count of conspiracy to distribute methamphetamine. In response to Patterson's Motion, the government submitted (1) a written proffer detailing the evidence it believes shows the existence of the conspiracy and the membership of that conspiracy, and (2) a list of statements, or categories of statements, that it will seek to introduce as coconspirator statements. In sum, the government's proffer alleges as follows. In early 2022, DEA agents of the Salt Lake City Metro Narcotics Task Force (the "Task Force") identified a large-scale drug trafficking organization (the "DTO") dealing in methamphetamine. Task Force members also identified members of the

---

[1] *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917 (1979).

[2] Docket No. 269.

1

DTO, including co-defendant, Caile Noble, the DTO leader. Agents then obtained a wire order to intercept communications to and from a phone used by Noble (the "8793 wire"). Agents also conducted surveillance on the identified members of the DTO.

Through the wire and surveillance, agents were able to intercept numerous communications between Noble and his drug supply source and alleged members of the DTO regarding the purchase and distribution of drugs. They discovered Noble would travel to California to pick up drugs from his supply source and, upon return, distribute those drugs to other alleged members of the DTO to be moved or further distributed. They also observed numerous drug transactions occur at Noble's home. Agents located Noble on one occasion when he was returning from California. Agents stopped him, searched his vehicle, and discovered 1 kilo of cocaine and 64 pounds of crystal methamphetamine in the trunk of the car.

Regarding Patterson specifically, agents intercepted a call between Noble and Patterson, wherein Noble instructed Patterson on how to take the product to another co-defendant, Neil Reedy. Agents subsequently intercepted calls between Noble and other co-conspirators discussing the details of Patterson's pick up and delivery of the product to Reedy. After the product should have been delivered, additional conversations were intercepted between Noble and members of the DTO discussing Patterson in relation to drug distribution activities. Further, after his arrest, Reedy told officers that Patterson had connected Reedy and Noble, and otherwise detailed Patterson's role in the DTO.

Noble was arrested at the same time as Reedy following execution of search warrant on Noble's home. Upon being interviewed by agents, Noble admitted to purchasing methamphetamine in California and bringing it to Utah. The search of Noble's home revealed

1,897 gross grams of methamphetamine inside a cooler that Noble had identified for the arresting agents. The government identified Patterson's role in the DTO as a redistributor for Noble.

Along with the proffer, the government also provided a list of statements it intends to introduce at trial, along with a table categorizing the statement by who stated it, who they said it to, and how it furthered the conspiracy.[3]

The government requests that the Court deny the Motion, arguing that it has established the existence of the conspiracy between Defendant and his co-conspirators through its written proffer. The government further requests that, instead of holding a potentially week-long hearing, the Court issue a conditional decision as to the admissibility of the co-conspirator statements relying on the proffer submitted by the government.

## II.  LEGAL STANDARD

Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if "[t]he statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Under this rule, statements by coconspirators are properly admissible as non-hearsay at trial if the Court determines, by a preponderance of the evidence, that (1) "a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy."[4] It is the burden of the government to prove each of the elements by a preponderance of the evidence and it is the trial court that determines admissibility.[5]

---

[3] Docket No. 280, Ex. A.

[4] *United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994) (citation omitted).

[5] *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); *United States v. Owens*, 70 F.3d 1118, 1124 (10th Cir. 1995).

"Before making a final ruling on the admissibility of such statements, a district court may proceed in one of two ways: (1) hold a *James* hearing outside the presence of the jury or (2) provisionally admit the evidence but require the Government to connect the statements to the conspiracy during trial."[6] In the Tenth Circuit, a *James* hearing is the "strongly preferred" method of determining the admissibility of coconspirator statements.[7] However, this remains a preference and the district court retains some discretion.[8] The Tenth Circuit has held that there is no abuse of discretion in denying a pretrial *James* hearing when the hearing would be lengthy and would entail calling and recalling officers and witnesses in an elaborate and repetitive procedure.[9]

## III. DISCUSSION

The Court will first analyze whether the government has sufficiently supported the existence of a conspiracy. "To prove conspiracy, the government must show (1) two or more persons agreed to violate the law, (2) the defendant knew the essential objectives of the conspiracy, (3) the defendant knowingly and voluntarily participated in the conspiracy, and (4) the alleged coconspirators were interdependent."[10]

First, "[t]o prove an agreement, the government need not offer direct proof of an express agreement on the part of the defendant. Instead the agreement may be informal and may be

---

[6] *United States v. Cornelio-Legarda*, 381 F. App'x 835, 845 (10th Cir. 2010) (citation omitted).

[7] *Urena*, 27 F.3d at 1491.

[8] *Id.*

[9] *United States v. Hernandez*, 829 F.2d 988, 994 (10th Cir. 1987).

[10] *United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006) (citation omitted).

4

inferred entirely from circumstantial evidence."[11] However, it is not enough for the government to show mere association with conspirators known to be involved in the crime; casual transactions between the defendant and conspirators known to be involved in the crime; or a buyer-seller relationship between the defendant and a member of the conspiracy.[12] Here, the evidence proffered by the government supports that Patterson agreed to violate the law with his co-conspirators by agreeing to pick up and drop off drugs, and by introducing some co-conspirators for the purposes of furthering the DTO. The proffered evidence further suggests that Patterson's co-defendants had experience working with him within the DTO.

Second, "[t]o prove knowledge of the essential objectives of a conspiracy, the government does not have to show the defendant knew all the details or all the members of a conspiracy."[13] "Rather, the government only needs to demonstrate the 'defendant shared a common purpose or design with his alleged coconspirators.'"[14] The evidence proffered by the government supports that Patterson understood that he and his co-conspirators were mutually engaged in drug distribution.

Third, "[a] defendant may be convicted of a conspiracy only if the government proves that the defendant had knowledge of the conspiracy and voluntarily participated therein."[15] "A conspirator need not know of the existence or identity of the other members of the conspiracy or

---

[11] *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1129 (10th Cir. 2004) (internal quotation marks and citation omitted).

[12] *United States v. Evans*, 970 F.2d 663, 669 (10th Cir. 1992) (internal quotation marks and citations omitted).

[13] *Yehling*, 456 F.3d at 1240 (citation omitted).

[14] *Id.* (quoting *Evans*, 970 F.2d at 669).

[15] *Evans*, 970 F.2d at 669.

the full extent of the conspiracy, but he or she must have a general awareness of both the scope and the objective of the enterprise to be regarded as a coconspirator."[16] The evidence proffered by the government supports that Patterson knew that he and his co-conspirators were mutually engaged in drug distribution and that he voluntarily participated therein.

Finally, "[i]nterdependence exists when 'each alleged coconspirator depends on the successful operation of each link in the chain to achieve the common goal.'"[17] "In other words, each coconspirator's 'actions must facilitate the endeavors of other alleged coconspirators or facilitate the venture as a whole.'"[18] The evidence proffered by the government supports interdependence among the co-conspirators. Specifically, that Noble acquired the drugs from out of state, brought them to Utah, and distributed them to Patterson and other co-conspirators for redistribution. The proffered evidence also supports that Patterson knew and worked with the other co-conspirators under the direction of Noble to move money and drugs amongst themselves.

Patterson argues that the government has not alleged any specific statements made by Patterson that prove his involvement in the conspiracy. However, even if this were true, it does not defeat the above analysis. Patterson further states broadly that he "challenges the government's proffer with respect to all of the[] elements" and "[a] rational jury could find that the alleged co-conspirators were not interdependent, that Defendant Patterson did not know all the details or all members of the conspiracy, or that each co-conspirator's actions 'facilitated the

---

[16] *Id.* at 669–70 (internal quotation marks and citation omitted).

[17] *Yehling*, 456 F.3d at 1241 (quoting *United States v. Dickey*, 736 F.2d 571, 582 (10th Cir. 1984)).

[18] *Id.* (quoting *Evans*, 970 F.2d at 670).

endeavors of the other alleged co-conspirators or facilitate the venture a whole.'"[19] This argument appears based on a misunderstanding of the governing standard. The assessment at this stage is instead if the government has supported each of the elements by a preponderance of the evidence, not if a rational jury could find in favor of the defendant. Further, as stated, Patterson needn't have known all the details or members of the conspiracy to be found guilty of participating in the conspiracy.[20]

Based on the above, the Court finds that the government's proffer sufficiently supports that it can demonstrate by a preponderance of the evidence that a conspiracy existed and Patterson was involved in the conspiracy.

The second element the Court must consider is whether the declarant and the defendant were both members of the conspiracy. As explained above, the government has provided a list of each statement they seek to introduce. The statements are made by either Noble or Chelsie Huggins, two of Defendant's co-defendants. Patterson does not specifically argue that Noble or Huggins are not participants of the conspiracy, and the evidence proffered by the government adequately supports that they are participants of the conspiracy.

Finally, the government must demonstrate that the statements were made during the course and in furtherance of the conspiracy. A statement is made during the course of a conspiracy if it is made before the objectives of the conspiracy have either failed or been achieved.[21] "Statements by a conspirator are in furtherance of the conspiracy when they are

---

[19] Docket No. 282, at 3–4 (quoting *Yehling,* 456 F.3d at 1240).
[20] *See Evans*, 970 F.2d at 669–70.
[21] *United States v. Perez*, 989 F.2d 1574, 1579 (10th Cir. 1993) (citation omitted).

'intended to promote the conspiratorial objectives.'"[22] The government alleges that each of the statements included in Exhibit A is made "to enlist or further participation in the group's activities."[23] Patterson does not dispute this or specify which, if any, particular statements disclosed by the government he challenges.

Upon careful consideration of the relevant factors outlined above, as well as the circumstances of this case, the Court will deny Patterson's request for a *James* hearing and will provisionally admit the statements and require the government to connect the statements to the conspiracy during trial. Specifically, considering the government's detailed proffer, the complexity of the case, and the number of defendants and statements at issue, the Court believes it would not be "reasonably practicable to require the showing be made before the co-conspirator's statements."[24]

IV.   CONCLUSION

It is therefore

ORDERED that Defendant's Motion for *James* Hearing (Docket No. 269) is DENIED.

DATED this _30th_ day of December, 2024.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[22] *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (quoting *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986)).

[23] *See* Docket No. 280, at 3; *id.* Ex. A.

[24] *Hernandez*, 829 F.2d at 993.